588 P.2d 548

STATE of New Mexico,
Plaintiff-Appellant,

v.

A. Alan GREENE, Defendant-Appellee.

No. 11837.

Supreme Court of New Mexico.

Dec. 21, 1978.

Toney Anaya, Atty. Gen., Lawrence A. Gamble, Asst. Atty. Gen., Santa Fe, Fred Chris Smith, Asst. Dist. Atty., Farmington, for plaintiff-appellant.

Reginald J. Storment, Appellate Defender, Martha A. Daly, Asst. Appellate Defender, Santa Fe, for defendant-appellee.

## OPINION

SOSA, Justice.

The State appeals from the trial court's order suppressing statements made by defendant on September 30 and October 4. The issue on appeal is whether the trial court abused its discretion in suppressing defendant's incriminating statements made to a police officer in Tampa, Florida on September 30, 1976, and to a police officer in Farmington, New Mexico on October 4, 1976, as having been made involuntarily. We find that the trial court properly suppressed the two statements of September 30 and improperly suppressed the statement of October 4.

Defendant A. Alan Greene is charged with first-degree murder under § 40A–2–1, N.M.S.A.1953 (Repl.1972). He was arraigned in magistrate court in Farmington on October 4, 1976, at which time he completed a certificate of indigency and requested a court-appointed attorney. A preliminary hearing was held on October 11, 1976. Defendant was arraigned in the District Court of San Juan County, New Mexico on November 1, 1976; an order appointing counsel was entered. On November 18, 1976, defendant filed a motion seeking suppression of all his oral and written statements to officers of the Tampa and Farmington police departments, and suppression of a .22 caliber hand gun alleged by police to be the murder weapon. Following an evidentiary hearing on March 4, 1977, the trial court ordered the suppression of all statements made by defendant to the police officers and ordered the suppression of the gun as evidence.

The State appealed, contending that the trial court's conclusions of law were based upon an erroneous application of legal principles drawn from *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). This Court agreed and reversed the March 4, 1977 order suppressing defendant's statements. The cause was remanded to the trial court for reconsideration on application of the rule announced in *State v. Greene*, 91 N.M. 207, 572 P.2d 935 (1977).

On February 8, 1978, the trial court ruled that, considering the totality of the circumstances, the statements made by defendant on September 30, October 4, and October 9, 1976, as well as the .22 caliber gun obtained as a result of those statements, should be suppressed. The trial court found that the State did not meet its burden of showing that defendant had knowingly and voluntarily waived his constitutional rights in giving the statements.

The State now appeals from the February 8, 1978 order insofar as it suppresses the two statements of September 30 and the additional statement of October 4. The State contends that the statements were voluntarily made with a knowing and intelligent waiver of defendant's right to counsel and that the trial court abused its discretion in suppressing the statements.

We discussed the role of the trial court in our earlier opinion. We stated:

It is for the trial judge in the first instance to hear the evidence as to voluntariness, weigh the conflicts in the evidence presented at the suppression hearing, and determine whether the State has carried its "heavy burden." Where there is evidence to support the ruling of the trial court, we will not find error as a matter of law. (Citation omitted.)

*State v. Greene, supra,* at 213, 572 P.2d at 941 (1977).

▪ The admission or exclusion of evidence resides within the sound discretion of the trial court, and a trial court's ruling will not be overturned absent a showing of an abuse of discretion. *State v. Bell,* 90 N.M. 134, 560 P.2d 925 (1977); *State v. Ramirez,* 89 N.M. 635, 556 P.2d 43 (Ct.App.1976); *State v. Marquez,* 87 N.M. 57, 529 P.2d 283 (Ct.App.1974), *cert. denied,* 87 N.M. 47, 529 P.2d 273 (1974). Judicial discretion is abused if the action taken by the trial court is arbitrary or capricious. *State v. Madrigal,* 85 N.M. 496, 513 P.2d 1278 (Ct.App. 1973), *cert. denied,* 85 N.M. 483, 513 P.2d 1265 (1973). Such abuse of discretion will not be presumed; it must be affirmatively established. *State v. Serrano,* 76 N.M. 655, 659, 417 P.2d 795, 797 (1966).

In *State v. Greene, supra,* we announced the proper rule of law to be applied in determining the voluntariness of a waiver of an individual's constitutional rights. We stated:

A determination of the voluntariness of the subsequent waiver depends not merely on a formal utterance of waiver, but upon all the facts and circumstances of the particular case. *State v. Crump ,* 82 N.M. 487, 484 P.2d 329 (1971). These facts and circumstances include the background, experience and conduct of the accused. *State v. Sexton,* 82 N.M. 648, 485 P.2d 928, *cert. denied,* 82 N.M. 639, 485 P.2d 973 (Ct.App.1971).

In *State v. Ramirez,* 89 N.M. at 638, 556 P.2d at 46, the Court of Appeals stated:

[W]aiver of rights relates to the compliance with the strictures of *Miranda. Mi-* *randa* requires law enforcement officers, before questioning someone in custody, to give specified warnings and follow specified procedures during the course of an interrogation. Any statement given without compliance with these procedures cannot be admitted in evidence against the accused over his objection. This is true even if the statement is wholly voluntary. *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

▪ In *Mosley,* the United States Supreme Court stated that the *Miranda* requirement that police interrogation cease when the person in custody indicated he wished to remain silent did not create a *per se* proscription of indefinite duration upon further questioning by a police officer, nor impose a blanket prohibition against the taking or admission in evidence of voluntary statements, nor permit a resumption of the interrogation after a momentary cessation. The admissibility of incriminating statements obtained after a person in custody has initially decided to remain silent depends on whether his right to cut off questioning is scrupulously honored. 423 U.S. at 104, 96 S.Ct. 321. In *Mosley,* defendant's incriminating statements were admissible because he had been properly advised of his *Miranda* rights; when he exercised his right to remain silent, the officer immediately ceased the questioning and did not try to resume the interrogation. A second interrogation occurred after a significant time lapse, was directed to a murder not related to the crime with which he was charged, and was conducted at another location in the building by another officer.

This Court has held that a person in custody, having once invoked his right to have counsel present after being advised of his *Miranda* rights, may subsequently waive the right during questioning and give statements which are admissible at a later trial. *State v. Greene, supra,* at 215, 572 P.2d at 943. However, once a defendant invokes either the right to remain silent or the right to retained or appointed counsel, the State bears a heavy burden of demonstrating that a subsequent waiver is knowing and volun-

tary. *See State v. Ramirez, supra; State v. Sanchez*, 85 N.M. 368, 512 P.2d 696 (Ct.App. 1973).

▮▮▮▮ The State bears a heavy burden of establishing such waiver by a preponderance of the evidence. Courts indulge in every reasonable presumption against waiver. *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977).

[W]aiver of an accused's right to counsel, after such right has been asserted, "may properly be viewed with skepticism." And this "skepticism" finds increased justification if there is no substantial lapse of time between the request for counsel and its alleged waiver. (Footnotes omitted.)

*United States v. Grant*, 549 F.2d 942, 946 (4th Cir. 1977). An investigating officer's conduct, once the right to counsel is asserted, will be scrutinized with special care for any possibility of imposition, coercion, or unfair suggestion. *United States v. Crisp*, 435 F.2d 354 (7th Cir. 1970) *cert. denied*, 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 116 (1971). *See also Collins v. Fogg*, 425 F.Supp. 1339 (E.D.N.Y.1977), *aff'd*, 559 F.2d 1202 (2d Cir. 1977).

In order to determine whether the trial court abused its discretion in suppressing defendant's statements in this case, we examine each statement separately.

### The September 30 Statements

▮▮▮ Defendant was arrested in Tampa at approximately 4 p. m. on the authority of a New Mexico fugitive warrant. Upon being arrested, defendant was given full *Miranda* warnings; he refused to talk to the arresting officers and invoked his right to remain silent. At about 5 p. m., in the presence of Tampa officers, defendant spoke to officers of the Farmington police department by telephone. After receiving full *Miranda* warnings from the Farmington officers, defendant told them that they would be "wasting their time" until he had consulted counsel because he did not wish to incriminate himself. This was an effective invocation of defendant's right to counsel.

At about 7:10 p. m. a Tampa police detective, who had not been present during the telephone conversation, approached defendant. The detective had been informed that defendant had refused to talk to the arresting officers and that he had asserted his right to remain silent. The detective read defendant his *Miranda* rights. At this time defendant refused to sign a waiver of rights form or to allow the interview to be taped. The detective then began questioning defendant on the murder charge.

Defendant testified that he informed the detective that he did not wish to discuss the murder of his father, that he told the detective that he would enjoy talking to someone, but that he did not want to say anything relating to his father's murder. Thus, defendant for the third time attempted to invoke his right to remain silent. Nonetheless, the detective continued the interrogation. This is unlike the situation in *Michigan v. Mosley, supra,* where the police officer promptly ceased the interrogation when defendant stated he did not want to answer any questions about the crime with which he was charged, and where the defendant at no time asked to consult with an attorney or indicated that he did not want to discuss the unrelated crime. *See also State v. Clemons,* 27 Ariz.App. 193, 552 P.2d 1208 (1976).

The detective also told defendant that he knew he was a homosexual, that he sympathized with defendant's situation, and that he would see if defendant could be moved into a "gay" cell. During the course of this fifty-minute interview, defendant made incriminating statements concerning the murder of his father. Defendant was returned to his cell.

At this time the detective told the jailer to double check defendant because of an alleged statement made by defendant that he might "freak out." All of defendant's clothing was removed. The detective then spoke with one of the arresting officers and told him the statements defendant had made. The arresting officer placed a call to the Farmington police authorities, with whom the Tampa detective spoke for ap-

proximately seven to ten minutes. The Farmington authorities informed the detective that the case they had in New Mexico against defendant was "not all that good." After this call, the detective and arresting officer met with their supervisors for about twenty minutes. They discussed different procedures of interviewing defendant. As indicated in the detective's report, it was decided that he would return and attempt to get defendant to talk in detail of his father's murder.

At about 9:30 p. m. defendant was again brought to the interrogation room. He was given his *Miranda* rights; he indicated he understood them and recited them back to the detective. The detective told defendant that the information he was giving him would help the Tampa police understand why people commit murders and why people violate the law. The detective testified that when defendant became leary of further testimony, he did not cease the interrogation but rather assured defendant that his main concern was in helping him. The detective also testified that when defendant asked him if he would testify against defendant at his trial, he replied that the New Mexico authorities probably could not afford to fly him to New Mexico and that defendant had nothing to worry about.

Defendant testified that the detective told him he should not worry about what he said because the Farmington police officers were a "bunch of idiotic yokels" who did not have enough money to fly the detective to New Mexico to testify. Only after defendant was told that he had "nothing to worry about," that "he had it made," and that whatever he said would in all likelihood never be used against him, did he proceed to make further incriminating statements.

The interview lasted about one hour and twenty-five minutes; at its conclusion, defendant was returned to his cell. Defendant was again stripped and was kept naked for the remainder of the night.

Although the record reflects defendant waived his constitutional rights to assistance of counsel and to remain silent immediately preceding each statement, the record also shows repeated refusals by the interrogating officer to honor defendant's invocations of these rights, the coercive effect of placement of defendant in detention without his clothing in a "straight" cellblock, and misrepresentations regarding the use and effect of his statements.

Considering the totality of the circumstances, we find defendant's initial statements were not the result of an intelligent and knowing waiver of his right to counsel. The State has failed to meet its burden of showing defendant knowingly and voluntarily waived his constitutional rights in giving the statements; therefore, they are inadmissible. We affirm the trial court's order suppressing these two statements.

*The October 4 Statement*

■ A more difficult question is presented by defendant's October 4 statement. On October 1, 1976, defendant waived extradition and was turned over to New Mexico and Colorado police officers. He was returned to Farmington on October 3, 1976. Defendant was questioned for three hours by Farmington police officers on October 4. This questioning was preceded by a recitation of *Miranda* rights. Defendant was informed by a Farmington officer that he would have an opportunity to correct a transcription of his oral statement; he was further informed that he would be allowed to consult with an attorney before signing the statement. After being so informed and advised, defendant voluntarily signed a *written* waiver of rights form. He proceeded to make an oral statement which was recorded in shorthand by a secretary and thereafter transcribed. Defendant refused to sign the statement until he could see an attorney.

There is no evidence that defendant was misled by the Farmington officials. At no time was he advised that his statement would not be used against him if he did not sign it. He received no assurances that the statement was for any limited purpose. *See United States v. Massey*, 550 F.2d 300 (5th Cir. 1977). Nothing in the record sug-

gests defendant lacked knowledge or understanding of his rights or that he was not acting voluntarily when he waived those rights. *See State v. Maples,* 82 N.M. 36, 474 P.2d 718 (Ct.App.1970). There is also no evidence that defendant's will was overcome. *See State v. Lopez,* 80 N.M. 130, 452 P.2d 199 (1969). In fact, during the interview, defendant stated: "My lawyer is going to kick my ass for this." The Farmington officer *immediately* told defendant that he could stop the interview at any time. Defendant answered that he was aware of that and said "[b]ut what the hell? Defendant continued to make the statement. We find defendant voluntarily and knowingly waived his right to remain silent and right to counsel when he made the October 4 statement. The trial court erred in suppressing that statement. Therefore, we reverse the trial court's order insofar as it suppressed the October 4 statement.

IS IS SO ORDERED.

McMANUS, C. J., and FEDERICI, J., concur.

EASLEY and PAYNE, Justices, respectfully dissenting.

We dissent to the extent that the majority has upheld the suppression of defendant's statements of September 30. We feel defendant was adequately informed of his rights, fully understood those rights and knowingly waived them before making his statements.